# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1967 |
| COMPLETE TITLE: | Data Key Partners,<br>   Plaintiff-Appellant,<br>  v.<br>Permira Advisers LLC, Raphael Holding Company and Raphael<br>Acquisition Corp.,<br>   Defendants-Respondents,<br>Terrance D. Paul, Judith Ames Paul, Addison L. Piper,<br>Harold E. Jordan, Mark D. Musick, Randall J. Erickson,<br>and Glenn R. James,<br>   Defendants-Respondents-Petitioners,<br>Renaissance Learning, Inc.,<br>   Defendant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 350 Wis. 2d 347, 837 N.W.2d 624
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 107

| | |
|---|---|
| OPINION FILED: | July 23, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 18, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | Circuit |
|  COUNTY: | Wood |
|  JUDGE: | Jon B. Counsell |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | ABRAHAMSON, C.J., BRADLEY, CROOKS, JJ., dissent. (Opinion filed.) |
|  NOT PARTICIPATING: | |

ATTORNEYS:

  For the defendants-respondents-petitioners, there were briefs by *Jonathan C. Medow* and *Mayer Brown LLP*, Chicago; *Leon S. Schmidt Jr.* and *Schmidt & Grace*, Wisconsin Rapids; and *Howard A. Pollack*, *Michael B. Apfeld*, and *Godfrey & Kahn, S.C.*,

Milwaukee; and oral argument by *Jonathan C. Medow* and *Michael B. Apfeld*.

For the plaintiff-appellant, there was a brief by *Richard B. Brualdi* and *The Brualdi Law Firm, P.C.*, New York; and *Stacy Taeuber*, Madison; and oral argument by *Richard B. Brualdi*.

**2014 WI 86**

No. 2012AP1967
(L.C. No. 2011CV563)

STATE OF WISCONSIN : IN SUPREME COURT

**Data Key Partners,**

      **Plaintiff-Appellant,**

    **v.**

**Permira Advisers LLC, Raphael Holding Company
and Raphael Acquisition Corp.,**

      **Defendants-Respondents,**

**Terrance D. Paul, Judith Ames Paul, Addison L.
Piper, Harold E. Jordan, Mark D. Musick,
Randall J. Erickson, and Glenn R. James,**

      **Defendants-Respondents-Petitioners,**

**Renaissance Learning, Inc.,**

      **Defendant.**

NOTICE

**This opinion is subject to further
editing and modification. The final
version will appear in the bound
volume of the official reports.**

**FILED**

**JUL 23, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] reversing, in part, an order of the

---

[1] Data Key Partners v. Permira Advisers LLC, 2013 WI App 107, 350 Wis. 2d 347, 837 N.W.2d 624.

circuit court[2] that dismissed the Second Amended Complaint because it failed to state a claim upon which relief could be granted. Plaintiffs claim that defendants violated their fiduciary duties to the minority shareholder by selling Renaissance Learning, Inc. to Permira Advisers, LLC.[3] Defendant directors contend that plaintiffs have not pled facts sufficient to show that they are entitled to relief because they have not pled around the business judgment rule, codified at Wis. Stat. § 180.0828 (2011-12).[4] As to the majority shareholders, they claim that plaintiffs have likewise failed to plead facts sufficient to show that they are entitled to relief.

¶2 We conclude that Wis. Stat. § 180.0828(1) unequivocally sets forth the terms on which directors may be held liable for their decisions. The business judgment rule is both a substantive law and a procedural device by which to allocate a burden. Reget v. Paige, 2001 WI App 73, ¶¶17-18, 242 Wis. 2d 278, 626 N.W.2d 302 (the rule "immunize[s] individual directors from liability and protects the board's actions" and "creates an evidentiary presumption that the acts of the board

---

[2] The Honorable Jon M. Counsell of Wood County presided.

[3] The Second Amended Complaint reflects that plaintiffs are the entity, Data Key Partners, and "partners of Data Key Partners" who are suing individually because Data Key Partners "owned shares of Renaissance's common stock." Second Amended Complaint, ¶10. The caption, however, indicates that the partners are suing on behalf of the entity, Data Key Partners.

[4] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

of directors were done in good faith").   As such, a party challenging the decision of a director must plead facts sufficient to plausibly show that he or she is entitled to relief, i.e., facts that show the director's actions constitute: a "willful failure to deal fairly" with a "shareholder[] in connection with a matter in which the director has a material conflict of interest"; a "violation of criminal law"; a "transaction from which the director derived an improper personal profit"; or "[w]illful misconduct."  § 180.0828(1)(a)-(d).  This is a straightforward application of notice pleading standards to the substantive law of the case because substantive law drives what facts must be pled.

¶3   The Second Amended Complaint does not plead facts sufficient to plausibly show that the directors' actions come within the terms of potential liability, or that Judith and Terrance Paul (the Pauls) received an improper material benefit at the expense of the minority shareholders.  Accordingly, we reverse the decision of the court of appeals in regard to the issues presented to us for review.

I.  BACKGROUND

¶4  This lawsuit arises out of the merger and sale (hereinafter sale) of Renaissance Learning, Inc., a publicly traded corporation.   Plaintiffs are Data Key Partners, a partnership whose type is not apparent from the pleadings, and three partners, Lawrence Bass, Paul Berger and Robert Garfield. The partners allege indirect interests in Renaissance due to the shares of Renaissance that Data Key Partners owned.

3

¶5 The Pauls are the founders of Renaissance. They were directors of Renaissance and controlled 69 percent of outstanding Renaissance shares at the time of the sale. Defendants Addison Piper, Harold Jordan, Mark Musick, Randall Erickson and Glenn James also were directors of Renaissance at the time of the challenged transaction (hereinafter non-Paul directors).

¶6 Defendants Permira Advisers LLC, Raphael Holding Company and Raphael Acquisition Corporation are business organizations involved in the purchase of Renaissance. The claims made against all defendants for failure to disclose and against these corporate defendants for aiding and abetting are not part of this review.[5] (Counts III and IV, Second Amended Complaint.)

¶7 During 2010, the Pauls decided to sell their interest in Renaissance. Permira approached Renaissance, and made several offers to purchase the entire company. In its final offer, Permira offered to pay $15 per share to the Pauls and $16.60 per share to the minority shareholders. Renaissance's

---

[5] Plaintiffs claimed that the directors failed to disclose necessary information in the proxy statement, such as the Pauls' relationship to Goldman Sachs, a commercial banking firm that the directors hired to handle the financial aspects of the transaction. Plaintiffs also claimed Permira aided and abetted the directors and the Pauls in breaching their obligations to minority shareholders. The circuit court dismissed these claims and the court of appeals affirmed that dismissal. Data Key, 350 Wis. 2d 347, ¶¶47-59. The plaintiffs have not sought review of the court of appeals decision; accordingly, these two claims are not before us.

board of directors approved Permira's offer and Renaissance's shareholders accepted it, with the sale set to close October 19, 2011. As part of Permira's contract with Renaissance, Renaissance was obligated to pay a $13 million penalty if Renaissance cancelled the sale to Permira.

¶8 On September 27, 2011, after the agreement to sell Renaissance to Permira was reached, Plato Learning, Inc. began a bidding war. In one bid, Plato offered to purchase Renaissance for a payment to the Pauls of $15.10 per share and a payment to minority shareholders of $18 per share. That bid was not accepted. As a final bid, Plato offered $16.90 per share for all shareholders' interests, with no difference between minority and majority shares. This last offer would have netted the Pauls roughly $38 million more than the sale to Permira. It also was rejected, but not before plaintiffs sued to stop the Permira sale.

¶9 On October 7, 2011, plaintiffs sued in federal district court, claiming violations of the Securities Exchange Act of 1934 and breach of defendants' fiduciary duty. They sought to enjoin the sale to Permira. On October 14, 2011, the federal district court denied plaintiffs' motion to enjoin the sale, concluding that plaintiffs did not have "any likelihood of success" on the merits of their claims. Plaintiffs withdrew the federal claims, thereby raising a question of whether the federal court had jurisdiction. On November 28, 2011, the federal case was dismissed.

5

¶10 On September 23, 2011, plaintiffs commenced the lawsuit that is now before us in Wood County. Plaintiffs contend that Renaissance directors, which include the Pauls, breached their fiduciary duty to the minority shareholders. (Count I, Second Amended Complaint.) Plaintiffs also contend that defendants "are not entitled to any protection of Sec. 180.0828, Wis. Stat. or any protective provision in the Company's Articles of Incorporation or Bylaws."[6]

¶11 Plaintiffs further contend that the Pauls breached their fiduciary duty as majority shareholders by choosing to sell their majority interest in Renaissance to Permira. (Count II, Second Amended Complaint.) Plaintiffs alleged that the "Pauls have put . . . their personal interest in monetizing their holdings in the Company . . . ahead of that of the Company and the Company's minority shareholders."[7]

¶12 The circuit court heard argument that Plato's offer was subject to many contingencies, and that the board of directors of Renaissance was concerned that Plato could not fulfill them in the time remaining before the sale to Permira was set to close. The Pauls supported the transaction with Permira because it was more certain to result in an actual sale for all shareholders and because Renaissance would be subject to

---

[6] Second Amended Complaint, ¶27. As we mentioned previously, Wis. Stat. § 180.0828 is Wisconsin's codification of the business judgment rule, which is central to the directors' actions in regard to the sale of Renaissance.

[7] Id., ¶30.

a $13 million penalty if Renaissance's contract with Permira was breached. Renaissance was sold, and the sale netted the minority shareholders a 40 percent premium on the value of their shares when compared with the public exchange price prior to the bidding war. Because of the difference in the per share price paid to minority and majority shareholders, the minority shareholders received $10 million more than what they would have received if all shareholders were paid the same per share price by Permira.

¶13 Based on this information, the circuit court dismissed the Second Amended Complaint after concluding that it failed to state a claim upon which relief can be granted. The court reasoned that the business judgment rule protected the directors' actions and that the Pauls violated no legal duty when they chose to sell Renaissance to Permira.

¶14 The court of appeals reversed in part.[8] Data Key Partners v. Permira Advisers LLC, 2013 WI App 107, 350 Wis. 2d 347, 837 N.W.2d 624. It concluded that there were sufficient facts alleged to show breach of fiduciary duty claims against the directors and the Pauls. (Counts I and II, Second Amended Complaint.) The court of appeals criticized the circuit court for noting that there was a reasonable inference that a deal with Plato might not close and concluded that the business judgment rule should not be used to dismiss a complaint. Id., ¶23.

---

[8] See supra, note 5.

¶15 We granted defendants' petition for review, and now reverse the court of appeals on the claims presented to us for review.

## II.  DISCUSSION

¶16 Before us, plaintiffs contend that defendants, in their role as directors of Renaissance, breached their fiduciary duty to minority shareholders when the sale to Permira occurred. Plaintiffs further contend that the Pauls, as majority shareholders, also breached their fiduciary duty to minority shareholders when they voted their shares in favor of the sale to Permira. Defendants raise the business judgment rule and the insufficiency of the facts pleaded in the Second Amended Complaint as requiring dismissal for failure to state a claim.

### A.  Standard of Review

¶17 Whether a complaint states a claim upon which relief can be granted is a question of law for our independent review; however, we benefit from discussions of the court of appeals and circuit court. DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶10, 343 Wis. 2d 83, 816 N.W.2d 878.

¶18 When we review a motion to dismiss, factual allegations in the complaint are accepted as true for purposes of our review. Strid v. Converse, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983). However, legal conclusions asserted in a complaint are not accepted, and legal conclusions are insufficient to withstand a motion to dismiss. John Doe 67C v. Archdiocese of Milwaukee, 2005 WI 123, ¶19, 284 Wis. 2d 307, 700

8

N.W.2d 180; <u>Mitchell v. Lawson Milk Co.</u>, 532 N.E.2d 753, 756 (Ohio 1988).

### B.    Well-Pleaded Complaint

¶19  "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." <u>John Doe 1 v. Archdiocese of Milwaukee</u>, 2007 WI 95, ¶12, 303 Wis. 2d 34, 734 N.W.2d 827 (quoting <u>BBB Doe v. Archdiocese of Milwaukee</u>, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997)).  Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom.  <u>Kaloti Enters., Inc. v. Kellogg Sales Co.</u>, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205.  However, a court cannot add facts in the process of construing a complaint.  <u>John Doe 67C</u>, 284 Wis. 2d 307, ¶19.  Furthermore, legal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss.  <u>Id.</u>; <u>Mitchell</u>, 532 N.E.2d at 756.  Therefore, it is important for a court considering a motion to dismiss to accurately distinguish pleaded facts from pleaded legal conclusions.

¶20  Wisconsin Stat. § 802.02(1) sets the requirements for a complaint if it is to withstand a motion to dismiss for failure to state a claim.  Section 802.02(1)(a) provides:

> General rules of pleading.   (1) Contents of pleadings.   A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:
>
> (a) A short and plain statement of the claim, identifying the transaction or occurrence or series of

transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

¶21 In order to satisfy Wis. Stat. § 802.02(1)(a), a complaint must plead facts, which if true, would entitle the plaintiff to relief. Strid, 111 Wis. 2d at 422-23 ("It is the sufficiency of the facts alleged that control[s] the determination of whether a claim for relief is properly [pled]."). Bare legal conclusions set out in a complaint provide no assistance in warding off a motion to dismiss. See John Doe 67C, 284 Wis. 2d 307, ¶19. Plaintiffs must allege facts that, if true, plausibly suggest a violation of applicable law.[9]

¶22 In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court clarified what notice pleading requires in order to state a claim under Federal Rule 8(a)(2), the federal counterpart of Wis. Stat. § 802.02(1)(a).[10] Twombly involved a § 1 Sherman Act claim. Section 1 prohibits "restraints of trade . . . effected by a contract, combination, or conspiracy." Id. at 553 (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775 (1984)). The district court had dismissed the complaint for failure to state

---

[9] Factual assertions are evidenced by statements that describe: "who, what, where, when, why, and how." See State v. Allen, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433.

[10] Subsection 1 of Wis. Stat. § 802.02 is based on Federal Rule 8(a). Charles D. Clausen & David P. Lowe, The New Wisconsin Rules of Civil Procedure:  Chapters 801-803, 59 Marq. L. Rev. 1, 37 (1976).

10

a claim because the complaint alleged "parallel behavior" without also alleging "additional facts that 'ten[ded] to exclude independent self-interested conduct as an explanation for defendants' parallel behavior.'"  Id. at 552 (further citation omitted).  The additional necessary facts were critical because self-interest in defending one's own territory, although consistent with a violation, is not, in and of itself, contrary to the Sherman Act.  Id.

¶23 The Court of Appeals for the Second Circuit reversed, concluding that the district court had tested the complaint "by the wrong standard."  Id. at 553.  The Second Circuit "held that 'plus factors are not required to be pleaded to permit an antitrust claim based on parallel conduct to survive dismissal.'"  Id. (further citation omitted).

¶24 The Supreme Court disagreed.  It concluded that while "a showing of parallel 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement,' it falls short of 'conclusively establish[ing] agreement or . . . itself constitut[ing] a Sherman Act offense.'"  Id. (quoting Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540-41 (1954)).

¶25 The Supreme Court explained that the case before it presented the question "of what plaintiff must plead in order to state a claim under § 1 of the Sherman Act."  Id. at 554-55.  The Court explained that Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 555; Fed. R. Civ. P. 8(a)(2).  The

11

Court explained that the district court had applied the correct standard because plaintiff's pleading obligation required "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555. Furthermore, on a motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation and internal quotation marks omitted).

¶26 The Court explained that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 557 (emphasis added). In demonstrating the deficiency of alleging only parallel conduct as a Sherman Act violation, the Court instructed that, "it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" Id.

¶27 The Court instructed that plaintiffs were not free to ignore substantive law that governed their claim, and had to allege facts that suggested more than a "possibility" of a claim. Id. This was so because with a mere possibility as the standard "a plaintiff with a 'largely groundless claim' [would] be allowed to 'take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'" Id. at 557-58 (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

12

Given the potential for abuse, the Court held that "basic deficienc[ies] should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[11] Id. at 558 (citation and internal quotation marks omitted).

¶28 To amplify the force of its decision, the Court overruled Conley v. Gibson, 355 U.S. 41 (1957). Twombly, 550 U.S. at 562-63. The passage oft quoted from Conley was: "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

¶29 In overruling Conley, the Supreme Court clarified that this statement is not a correct statement of Federal Rule 8(a)(2)'s pleading requirements. Twombly, 550 U.S. at 563 (explaining that "this famous observation has earned its retirement[,]" as the "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). The Court explained that Conley's "no set of facts" language could be incorrectly read as saying that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings," when more facts actually are required to sufficiently state a claim that can proceed. Id. at 561.

---

[11] The Supreme Court recognized that discovery in civil cases "accounts for as much as 90 percent of litigation costs when discovery is actively employed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007).

13

¶30 The Supreme Court's decision in Twombly is consistent with our precedent.  See, e.g., Strid, 111 Wis. 2d at 422-23 (concluding that "[i]t is the sufficiency of the facts alleged that control[s] the determination of whether a claim for relief is properly [pled]").

¶31 In sum, Twombly makes clear the sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled.  Plaintiffs must allege facts that plausibly suggest they are entitled to relief.  With Twombly and Strid in mind, we turn to the substantive law that underlies plaintiffs' claims.

### C.  All Directors

### 1.  Potential liability

¶32 As a general principle, a corporate director has a "fiduciary duty to act in good faith and to deal fairly in the conduct of all corporate business."  Reget, 242 Wis. 2d 278, ¶12; Modern Materials, Inc. v. Advanced Tooling Specialists, Inc., 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996).  In Wisconsin, the business judgment rule "immunize[s] individual directors from liability and protects the board's actions from undue scrutiny by the courts."  Reget, 242 Wis. 2d 278, ¶17 (citing Kenneth B. Davis, Jr., Once More, The Business Judgment

Rule, 2000 Wis. L. Rev. 573 (2000)).  Wisconsin's business judgment rule is codified in Wis. Stat. § 180.0828(1).[12]

¶33  The business judgment rule is substantive law because "acts of the board of directors done in good faith and in the honest belief that its decisions were in the best interest of the company" cannot form the basis for a legal claim against directors.  Reget, 242 Wis. 2d 278, ¶18.  Honest errors of judgment by directors cannot subject them to personal liability.  Id., ¶17.

---

[12] Wisconsin Stat. § 180.0828(1) provides as follows:

> Limited liability of directors.  (1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

> (a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.

> (b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.

> (c) A transaction from which the director derived an improper personal profit.

> (d) Willful misconduct.

15

¶34 The business judgment rule is also procedural because it limits judicial review of internal corporate business decisions made in good faith. Einhorn v. Culea, 2000 WI 65, ¶19, 235 Wis. 2d 646, 612 N.W.2d 78; Reget, 242 Wis. 2d 278, ¶18 ("Procedurally, the business judgment rule creates an evidentiary presumption that the acts of the board of directors were done in good faith and in the honest belief that its decisions were in the best interest of the company."). In so doing, it precludes courts from second-guessing business decisions. Id. As we have explained:

> [T]his court will not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action. The business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest discretion, the management of the corporation cannot be assumed by the court.

Steven v. Hale-Haas Corp., 249 Wis. 205, 221, 23 N.W.2d 620 (1946).

¶35 Wisconsin's codification of the business judgment rule, Wis. Stat. § 180.0828(1), provides the framework for analyzing whether the facts pled relative to directors' business decisions are sufficient to state a claim. This is so because § 180.0828(1) provides that "a director is not liable" unless the facts describing the director's actions constitute: (1) a "willful failure to deal fairly" with a "shareholder[] in connection with a matter in which the director has a material conflict of interest"; (2) acts from which "the director derived

16

an improper personal profit"; or (3) "[w]illful misconduct." § 180.0828(1)(a), (c) and (d) (emphasis added).[13]

¶36 Stated otherwise, these exceptions to the substantive shield from liability for a director's actions identify potential breaches of a director's fiduciary duty. Accordingly, plaintiff must plead sufficient facts to plausibly show the director's acts fall within the parameters of Wis. Stat. § 180.0828(1) in order to survive a motion to dismiss.

¶37 This approach is not an addition to the requirements of notice pleading; rather, this framework applies notice pleading by requiring facts that show plaintiff is entitled to relief. See Twombly, 550 U.S. at 555 (explaining that plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" and that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (citation and internal quotation marks omitted)).

¶38 Twombly's analysis of pleading requirements is instructive of the pleading analysis that is required upon a claim that a director breached his or her fiduciary duty. To explain further, in Twombly, the pleading of "parallel action" was insufficient to state a claim because self-interest in protecting one's own territory by action parallel to that of another merchant did not contravene anti-trust law. Id. at 556-

---

[13] Wisconsin Stat. § 180.0828(1)(b) addresses a violation of criminal law. There is no such contention here, so we do not address it in this opinion.

17

57.   It is only when there is parallel action by agreement that the Sherman Act engages.   Therefore, in order to state a claim under the Sherman Act, the pleader must allege facts that create a plausible claim that parallel actions were taken by agreement. Id. at 557.

¶39 In a similar manner, not all directors' acts are subject to judicial review because of Wis. Stat. § 180.0828's limitation on director liability.   In order to fall outside of the protection that the legislature has granted directors, plaintiffs must plead facts that create a plausible claim that the directors' acts were taken in contravention of § 180.0828(1).   Therefore, to survive a motion to dismiss, plaintiffs must plead facts sufficient to plausibly show that the directors' actions constitute:   (1) a "willful failure to deal fairly" with the minority shareholders on a matter in which the director has "a material conflict of interest"; (2) receipt of an "improper personal profit"; or (3) "[w]illful misconduct." § 180.0828(1)(a), (c) and (d).

¶40 A minority of jurisdictions have adopted a different approach, carving out an exception to notice pleading when the business judgment rule is at issue.   Stephen A. Radin, The Business Judgment Rule: Fiduciary Duties of Corporate Directors, 58-61 (6th ed. 2009).   A leading case taking this approach seems to be In re Tower Air, Inc., 416 F.3d 229 (3d Cir. 2005).[14]

---

[14] In re Tower Air, Inc., 416 F.3d 229 (3d Cir. 2005), was decided before Twombly.

18

There, the court held that it generally would "not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)." Id. at 238. However, because the plaintiff raised the business judgment rule on the face of the complaint, the court held that he "must plead around the business judgment rule." Id.

¶41 Plaintiffs in the case before us also asserted the business judgment rule on the face of the Second Amended Complaint, claiming that the directors "are not entitled to any protection of Sec. 180.0828, Wis. Stat."[15] To support this contention, they repeated the legal conclusions set out in § 180.0828(1), arguing that the directors engaged in "willful misconduct by willfully failing to deal fairly with the Plaintiffs and the Company's other minority public shareholders in a matter in which they have a material conflict of interest."[16] They failed, however, to plead facts supporting those conclusions, as we explain in the application section. Therefore, we note that even if we were to adopt the approach of Tower Air, we would conclude that the Second Amended Complaint must be dismissed.

¶42 More importantly, we conclude that Tower Air's assertion that the pleadings must overcome the business judgment rule only when it is raised first in the complaint suffers from two fatal flaws. First, as we explained above, the business

---

[15] Second Amended Complaint, ¶27.

[16] Id.

judgment rule is a rule of substantive law, not merely an affirmative defense to be raised in subsequent pleadings. See Kaye v. Lone Star Fund V (U.S.), L.P., 453 B.R. 645, 679 (N.D. Tex. 2011) (concluding that the protections of the business judgment rule are substantive and largely independent of the notice purpose of procedural rules of pleading).[17] Second, from a policy perspective, if plaintiffs could bring claims that the business judgment rule precludes simply by not mentioning the rule in the complaint, plaintiffs would be given "a powerful and perverse incentive to 'dummy-up' about the obvious implications of the business judgment rule." Id. at 679-80 (citation omitted). This would promote unnecessary, meritless litigation.

¶43 Having explained that notice pleading requires plaintiffs to plead facts sufficient to avoid the business judgment rule, even when it is not raised on the face of the complaint, we now explain that plaintiffs have not done so.

## 2. Application

¶44 Plaintiffs' Second Amended Complaint is not completely devoid of facts. It contains facts showing that the Pauls and the other directors favored the sale to Permira, rather than pursuing Plato to see if a sale to Plato could be put together. It also alleges that the directors and the Pauls received

---

[17] See also NCS Healthcare, Inc. v. Candlewood Partners, LLC, 827 N.E.2d 797, 802-03 (Ohio Ct. App. 2005) ("Fed. R. Civ. P. 12(b)(6) and Del. Ch. R. 12(b)(6) are textually identical," and therefore, a plaintiff must allege "facts sufficient to overcome the business-judgment-rule protections" under state law).

benefits from the Permira sale, including the continuing ability to serve on the board, vesting of certain stock options, indemnification, and liquidity for retirement. We now explain, however, that these factual allegations are not enough because they fall far short of plausibly showing that plaintiffs are entitled to relief.

¶45 We begin with plaintiffs' allegation that the non-Paul directors were not disinterested decision-makers because the Pauls could, as majority shareholders, vote them off the board at any time.[18] This may imply that a desire to remain a director created a material conflict of interest for the directors. However, if desiring to continue on as a director created a "material conflict of interest" and evidenced "willful failure to deal fairly with shareholders," no director would be protected by the business judgment rule because each director consents to serve, thereby evidencing a desire to be a board member. Therefore, a plaintiff may not rebut the business judgment rule by "merely alleg[ing] that a certain decision might lead to the potential of giving a director a longer tenure on the board of directors." Wash. Bancorporation v. Said, 812 F. Supp. 1256, 1268 (D.D.C. 1993).

¶46 Additionally, because the directors each owned shares in the company, any benefit they would receive in their fees as directors may not have been material, as the fees could be offset by a decrease in the value of their shares if they made a

---

[18] Second Amended Complaint, ¶5.

21

poor decision in regard to selling.  See generally McGowan v. Ferro, 859 A.2d 1012, 1030 (Del. Ch. 2004).  Contrary to plaintiffs' characterization, "stockholdings in a company by directors create powerful incentives to get the best deal in the sale of that company."  Id.

¶47 Plaintiffs also allege that the directors breached their duty by supporting the sale to Permira because the Pauls would not support a potential sale to Plato.[19]  This allegation fails for at least three reasons.  First, a "controlling interest of majority stock ownership does not deprive the corporation's directors of the 'presumptions of independence.'" Weinstein Enters., Inc. v. Orloff, 870 A.2d 499, 512 (Del. 2005) (quoting Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000))).

¶48 Second, "allegations challenging the independence of directors fail when the directors alleged to lack independence are not beholden to anyone who is interested in the transactions challenged."  Radin, supra, at 108 (citation and internal quotation marks omitted).  As we explain in the next section, plaintiffs have failed to show that the Pauls acted improperly. It matters not, then, if the directors deferred to the Pauls.

¶49 Most importantly, the pleadings do not show that the directors' actions were not the product of business judgment. The bids from Plato were far from creating a certain sale.  In

---

[19] Id., ¶25.

this regard, the directors considered Plato's bids, and they also considered the significant risks associated with an evaluation that would be occurring in the eleventh hour, as the Permira sale was only days away from closing and contained a $13 million penalty if Renaissance backed out of that deal to try to put together a sale to Plato.

¶50 The sale of a corporation of this size would involve numerous documents, the terms of which would require negotiation if a new buyer were chosen; new proxy statements would have to be submitted to and reviewed by the Securities and Exchange Commission, to state only a few tasks that trailed along after Plato began its bidding war.[20]   Furthermore, no sale could go forward without the Pauls' support; they controlled 69 percent of the shares.   The directors could in good faith conclude that a bird in the hand was worth two in the bush.   There is nothing improper about such a decision.   See Tower Air, 416 F.3d at 239 (when it is apparent at pleading that there is "an ostensibly legitimate business purpose for an allegedly egregious decision," the complaint should be dismissed).

¶51 Next, plaintiffs allege that the directors obtained a benefit when the directors' restricted shares vested upon the sale of Renaissance to Permira.[21]   However, the record shows that the shares would vest "upon termination of . . . service as a

---

[20] Petitioners' Brief, p. 31.

[21] Second Amended Complaint, ¶¶26, 62(a).

23

director," regardless of to whom Renaissance was sold.[22]  In this regard, the court of appeals appears to have added facts to those plead, contrary to our direction in John Doe 67C, 284 Wis. 2d 307, ¶19, when it asserted that ¶62 of the Second Amended Complaint "supports a reasonable inference that the directors would have received this [vesting] benefit only from a sale to Permira." Data Key, 350 Wis. 2d 347, ¶28.  The Second Amended Complaint never alleges that vesting would occur only upon a sale to Permira.

¶52 In coming to its conclusion about stock vesting, the court of appeals' rationale also is inconsistent.  The court of appeals says that the plaintiffs may "concede" that vesting would be available on the sale of Renaissance to any purchaser, not just upon a sale to Permira. Id., ¶29.  However, the court of appeals then discounts plaintiffs' concession and instead employs vesting as a basis for refusing to dismiss the claim against the non-Paul directors. Id.

¶53 Plaintiffs also alleged that the directors obtained rights of indemnification from the sale to Permira.[23]  They do not assert that this benefit would occur only upon the sale to Permira.  Furthermore, this allegation cannot satisfy any term of potential liability in Wis. Stat. § 180.0828(1) because Wis. Stat. § 180.0851 generally requires "mandatory indemnification"

---

[22] Renaissance's filing with Securities and Exchange Commission, Appellant's Supplemental Appendix, pp. 110-11.

[23] Second Amended Complaint, ¶62(e).

for corporate directors when sued for actions taken as a director.  See also Malpiede v. Townson, 780 A.2d 1075, 1085 (Del. 2001) (explaining that "[e]xcept in egregious cases, the threat of personal liability for approving a merger transaction does not in itself provide a sufficient basis to question the disinterestedness of directors because the risk of litigation is present whenever a board decides to sell the company.").

¶54 To explain further, the exceptions from mandatory indemnification under Wis. Stat. § 180.0851 are the same as the four exceptions set out in Wis. Stat. § 180.0828(1). § 180.0851(2).   Therefore, plaintiffs must allege facts sufficient to show that indemnification was not required due to the same terms of potential liability as are set out in § 180.0828 in regard to the business judgment rule.

¶55 Legislatures, including Wisconsin's, enacted statutory provisions requiring director indemnification because directors often were sued for actions taken on behalf of corporations and that litigation was causing directors to resign and to refuse to serve on boards of directors.  See A Comprehensive Approach: Director and Officer Indemnification in Wisconsin, 71 Marq. L. Rev. 407, 411 n.23 (1988).  "The director and officer liability crisis of recent years has led to the expansion of corporate laws which give added protection to corporate officials who act within the scope of their corporate duties."  Id. at 407.

¶56 In sum, plaintiffs have not plead facts sufficient to set forth a plausible claim that the directors' actions leading up to the sale to Permira fall within the terms of potential

25

liability set out in § 180.0828(1).  Plaintiffs have not pleaded facts that, if true, would constitute a "willful failure" to deal fairly with minority shareholders on matters in which the directors had a "material conflict of interest"; or that the directors received an "improper personal profit"; or that their actions demonstrated "willful misconduct."  Accordingly, the Second Amended Complaint in regard to directors' actions must be dismissed.

### D.  Majority Shareholders

¶57  The business judgment rule, as codified in Wis. Stat. § 180.0828, applies by its terms to officers and directors. There is no mention of protection for majority shareholders. Therefore, we do not look to § 180.0828 in regard to plaintiffs' claims against the Pauls in their role as majority shareholders of Renaissance.

¶58  Plaintiffs' claim against the Pauls is grounded in the Pauls' vote to sell Renaissance to Permira.  However, unless restricted by the articles of incorporation or a statute, and the Second Amended Complaint contains no such allegation, each outstanding share "is entitled to one vote on each matter voted on at a shareholders' meeting."  Wis. Stat. § 180.0721. Therefore, the Pauls had a statutory right to vote their shares in approval of the sale to Permira.  Accordingly, any limitation on the Pauls' statutory right to vote their shares as they saw fit must be a common law limitation.

¶59  Under common law, majority shareholders have a very limited fiduciary duty to minority shareholders.  Simply stated,

26

majority shareholders cannot use their voting power to require corporate action that grants majority shareholders an improper material benefit at the expense of minority shareholders. Notz v. Everett Smith Group, Ltd., 2009 WI 30, ¶4, 316 Wis. 2d 640, 764 N.W.2d 904 (concluding that "majority shareholders' appropriation of the due diligence paid for by the corporation [was a] constructive dividend to the majority shareholder[s]" at the expense of minority shareholders, thereby supporting a breach of majority shareholders' fiduciary duty); Theis v. Durr, 125 Wis. 651, 661-62, 104 N.W. 985 (1905) (concluding that the corporate resolution that reduced the amount of capital stock in the corporation benefitted the majority shareholders, who owed subscription debt, at the expense of the minority shareholders, who had fully paid for their shares).

¶60 Plaintiffs contend that the Pauls' receipt of a non-exclusive, non-transferrable license to employ Renaissance's software for the internal educational use of the Pauls' family was the receipt of an "improper personal profit," through which the Pauls breached their fiduciary duty to the minority shareholders.[24] However, nowhere in the Second Amended Complaint do the plaintiffs allege that this non-exclusive, non-transferrable license is worth more than the $10 million bonus that the minority shareholders received. Accordingly, because the Pauls may receive benefits in addition to cash payments for their shares so long as the benefits are not achieved at the

---

[24] Id., ¶62(b).

27

expense of the minority shareholders, and because there is no allegation that this license was worth more than the $10 million minority shareholder bonus, plaintiffs have not pled facts that plausibly demonstrate that the Pauls received an improper material benefit at the expense of minority shareholders.

¶61  Plaintiffs also allege that the Pauls' personal banker was involved in the sale.  They do not explain, however, how the personal banker's services benefitted the Pauls.  Nor do they allege that the personal banker engaged in any kind of improper behavior or had something to gain from the Permira sale rather than a sale to Plato.  See generally, McMillan v. Intercargo Corp., 768 A.2d 492, 496 (Del. Ch. 2000) (director who was a partner in a law firm that participated in a merger was not "interested" because "[n]othing in the complaint indicates that [the director or firm] stood to obtain legal work [from the company] after the merger").  Again, we fail to see how this allegation shows that plaintiffs are entitled to relief.

¶62 Finally, plaintiffs allege that the Pauls breached their fiduciary duty by putting "their personal interest in monetizing their holdings in the Company . . . ahead of that of the Company and the Company's minority shareholders."[25]  There is no allegation that Renaissance was sold at fire-sale prices or that the Pauls were facing a financial emergency that required them to sell their interest in Renaissance quickly.  Without pleading additional facts, the allegation that the Pauls wanted

---

[25] Id., ¶30.

28

to sell their interest cannot support the conclusion that they caused the corporation to provide them with an improper material benefit at the expense of the minority shareholders.

¶63 In re Synthes, Inc. Shareholder Litigation, 50 A.3d 1022 (2012), provides a useful comparison with the case now before us. There, a Delaware court considered a minority shareholder's claim for breach of duty based on conduct of the majority shareholder. Id. at 1024. The majority shareholder and founder of Synthes was ready to retire and wanted to divest his stockholdings in Synthes. Id. at 1025. In the lawsuit that followed Synthes' sale, plaintiffs alleged that the majority shareholder breached his fiduciary duty because minority shareholders received the same equity and cash payment per share as did the majority shareholders, rather than a full cash payment. Id. at 1039. In dismissing the complaint for failing to plead facts sufficient to state a claim, the court instructed that because the minority and majority shareholders received pro rata payment when the majority shareholder could have sought a premium for his controlling interest, the majority shareholder was in a safe harbor from litigation. Id. at 1024.

¶64 The Pauls' sale of their controlling interest in Renaissance is on all fours with the majority shareholder's sale of his interest in Synthes. Both were founders of the corporations; both wanted to retire; neither had a pressing need to sell their interests at fire-sale prices; neither received more per share than did the minority shareholders. As with the sale of Synthes, plaintiffs here have stated no claim that

29

prevents the Pauls' from coming within the safe harbor, as the minority shareholders received more than a pro rata payment——they received a premium.    Accordingly, we conclude that the Second Amended Complaint fails to state a claim upon which relief can be granted in regard to the Pauls and accordingly, it must be dismissed in its entirety.

### III.    CONCLUSION

¶65 We conclude that Wis. Stat. § 180.0828(1) unequivocally sets forth the terms on which directors may be held liable for their decisions.    It is both a substantive law and a procedural device by which to allocate a burden.    Reget, 242 Wis. 2d 278, ¶¶17-18 (the rule "immunize[s] individual directors from liability and protects the board's actions" and "creates an evidentiary presumption that the acts of the board of directors were done in good faith").    As such, a party challenging the decision of a director must plead facts sufficient to plausibly show that they are entitled to relief, i.e., facts that show the director's actions constituted:    a "willful failure to deal fairly" with a "shareholder[] in connection with a matter in which the director has a material conflict of interest"; a "violation of criminal law"; a "transaction from which the director derived an improper personal profit"; or "[w]illful misconduct."    § 180.0828(1)(a)-(d).    This is a straightforward application of notice pleading standards to the substantive law of the case because substantive law drives what facts must be pled.

¶66 The Second Amended Complaint does not plead facts sufficient to plausibly show that the directors' actions come within the terms of potential liability, or that the Pauls received an improper material benefit at the expense of the minority shareholders. Accordingly, we reverse the decision of the court of appeals in regard to the issues presented to us for review.

*By the Court.*—The decision of the court appeals is reversed.

¶67 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. I would affirm the court of appeals. I would follow Wisconsin law and conclude that as a general rule, parties need not plead specific facts at the motion-to-dismiss phase. In the instant case, although the plaintiffs raised the business judgment rule in their complaint, the plaintiffs also set forth sufficient facts to plead around the rule and provide notice to the defendants of the claim being alleged.[1]

¶68 The majority opinion holds that "plaintiffs must allege facts that, if true, <u>plausibly</u> suggest a violation of applicable law,"[2] the majority opinion relies on <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).[3] In the federal courts, <u>Twombly</u>'s standard is interpreted with the subsequent case <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). <u>Twombly</u> required a plaintiff in an antitrust case alleging violations of the federal Sherman Act to "state a claim to relief that is plausible on its face."[4] <u>Iqbal</u> required a plaintiff who alleged a <u>Bivens</u>[5] action against federal law enforcement officers for

---

[1] See <u>Data Key Partners v. Permira Advisors LLC</u>, 2013 WI App 107, ¶25, 350 Wis. 2d 347, 837 N.W.2d 624.

[2] Majority op., ¶21 (emphasis added). The footnote cited for this proposition does not describe "plausibility" at all. Majority op., ¶21 n.9.

[3] <u>See</u> majority op., ¶¶22, 28-31, 37-38.

[4] <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

[5] <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

1

liability regarding the harsh conditions of his confinement to plead facts that "state a plausible claim for relief."[6]

¶69 No one is sure what <u>Twombly</u> means: "Exactly how implausible is 'implausible' remains to be seen . . . ."[7] <u>Twombly</u> and <u>Iqbal</u> have created confusion and chaos in the federal courts regarding the current state of pleading requirements.[8] Under <u>Twombly</u>/<u>Iqbal</u>, federal district courts have increased the rate at which they grant motions to dismiss.[9]

¶70 No Wisconsin case has adopted the rule as stated in <u>Twombly</u> and <u>Iqbal</u>. <u>Twombly</u> was not argued or briefed in the instant case. The majority opinion relies on the <u>Twombly</u> heightened pleading standard without any briefing or argument. I have written before that this court should give counsel the opportunity to develop arguments before the court in the adversarial system:

---

[6] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009)

[7] <u>Courie v. Alcoa Wheel & Forged Prods.</u>, 577 F.3d 625, 630 (6th Cir. 2009) (granting a motion to dismiss a plaintiff's claim that his union discriminated against him on the basis of race, despite deeming the plaintiff's claim for relief "plausible"). <u>See generally</u> 5 Charles Alan Wright & Arthur R. Miller et al., <u>Federal Practice & Procedure</u> § 1216 (3d ed. 2014) ("[C]ourts continue to struggle to categorize what allegations meet the [<u>Twombly</u> and <u>Iqbal</u>] decisions' amorphous requirements.").

[8] Patricia W. Hatamyar, <u>The Tao of Pleading: Do Twombly and Iqbal Matter Empirically?</u>, 59 Am. U. L. Rev. 553, 583 (2010).

[9] <u>See, e.g.</u>, David Freeman Engstrom, <u>The Twiqbal Puzzle and Empirical Study of Civil Procedure</u>, 65 Stan. L. Rev. 1203, 1231 (2013) (collecting empirical studies of post-<u>Twombly</u>/<u>Iqbal</u> grants of motions to dismiss in federal district courts, all of which demonstrate increases).

Some justices proceed to make decisions without benefit of arguments or briefs by the parties. Others prefer more restraint. Some justices apparently perceive that the rule of law is advanced by a sua sponte approach. We do not.

. . . .

The rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral argument.

. . . .

Indeed, a court's sua sponte determination of an issue may raise due process considerations: A court may be depriving parties of their right to a meaningful appeal, to due process notice, and to adversary counsel.[10]

¶71 As Justice Bradley has recently written, this court's role is to weigh the arguments of counsel, not to make arguments as counsel:

By raising sua sponte a brand new outcome determinative issue, an appellate court tends to blur the lines between the role of the lawyer as advocate and the role of the judge as impartial decision maker. In contrast to the other branches of government, the judicial branch's role seems better fitted to respond to issues presented rather than creating issues to present.[11]

---

[10] Maurin v. Hall, 2004 WI 100, ¶¶119-121, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring), (overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216.)

[11] Attorney's Title Guar. Fund v. Town Bank, 2014 WI 63, ¶56, ___ Wis. 2d ___, ___ N.W.2d ___ (Bradley, J., dissenting); see also Maurin, 274 Wis. 2d 28, ¶120 (Abrahamson, C.J. & Crooks, J., concurring) ("The rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral arguments.").

¶72 Rather than provide a detailed critique of the majority opinion, I am setting forth the opinion I think should have been written by this court.

* * * *

¶73 *This is a review of a published decision of the court of appeals reversing an order of the circuit court for Wood County, Jon M. Counsell, Judge.*[12] *The circuit court dismissed the complaint, concluding that the complaint failed to state a claim upon which relief can be granted. The court of appeals reversed the order of the circuit court. I would affirm the decision of the court of appeals and remand the matter to the circuit court for further proceedings.*

¶74 *The plaintiff is Data Key Partners, a minority shareholder of Renaissance Learning, Inc., a publicly traded Wisconsin corporation headquartered in Wisconsin Rapids, Wisconsin. The complaint alleges a breach of fiduciary duty by the directors and the majority shareholders in accepting a purchase agreement for the corporation from Permira Advisors LLC.*

¶75 *The defendants are Permira Advisors LLC, Raphael Holding Company, and Raphael Acquisition Corporation (collectively the buyer-defendants); Terrance D. Paul and Judith Ames Paul (collectively the Pauls); Addison L. Piper, Harold E. Jordan, Mark D. Musick, Randall J. Erickson, and Glenn R. James (collectively the non-Paul director-defendants); and Renaissance Learning, Inc.*

---

[12] *Data Key Partners v. Permira Advisors LLC*, 2013 WI App 107, 350 Wis. 2d 347, 837 N.W.2d 624.

4

¶76 The claims in the complaint at issue here allege that minority shareholders were harmed by: (1) the non-Paul director-defendants' breach of fiduciary duties for failing to independently investigate the multiple bids for purchase of the corporation and for acting in their own personal interests against those of the shareholders; and (2) the Pauls as majority shareholders for engaging in self-dealing, breaching their fiduciary duties in accepting the purchase agreement favorable to their personal interests.[13]

¶77 The defendants assert that the complaint fails to allege a claim upon which relief can be granted because it does not allege facts that, if proven, would establish an exception to the business judgment rule.[14]

---

[13] The other two claims——a claim against the directors for failure to disclose information and a claim against Permira for allegedly aiding and abetting breaches of fiduciary duty by the other defendants——were dismissed by the circuit court. The court of appeals upheld dismissal of these claims. The parties do not address these claims, and neither do I.

[14] Wisconsin Stat. § 180.0828 creates a statutory version of the business judgment rule: A director is not liable for damages for liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the claimant proves that the breach or failure to perform falls within one of the exceptions set forth in the statute.

Section 180.0828 reads in full as follows:

(1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the

5

¶78 For the reasons set forth, I agree with the court of appeals that the complaint satisfies Wisconsin's requirements of notice pleading. Our pleading rules require only that a complaint plead a "short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Wis. Stat. § 802.02(1).

¶79 The complaint in the instant case gives fair notice to the defendants of the claims upon which relief can be granted. This court is not presented with sufficient reason to create an exception to our notice pleading requirements in the present case. Our decision involves only the motion-to-dismiss phase of the proceedings. I do not comment on the application of the

---

breach or failure to perform constitutes any of the following:

(a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.

(b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.

(c) A transaction from which the director derived an improper personal profit.

(d) Willful misconduct.

(2) A corporation may limit the immunity provided under this section by its articles of incorporation. A limitation under this subsection applies if the cause of action against a director accrues while the limitation is in effect.

6

*business judgment rule to later stages of the proceeding, and I do not comment on the merits of the plaintiff's claims, only the sufficiency of the complaint.*

*¶80 I commend the court of appeals for its thorough analysis of the claims. I benefited substantially from its cogent discussion, notably the interplay between our state's notice pleading rules and the business judgment rule.*

*¶81 Accordingly, I would affirm the decision of the court of appeals holding that the circuit court erred in granting the motions to dismiss the two claims discussed above, and I would remand the matter to the circuit court for further proceedings consistent with this opinion.*

*I*

*¶82 The facts and procedural history set forth herein are based on the complaint.*

*¶83 Renaissance Learning, Inc. was a publicly traded Wisconsin corporation founded by the Pauls in 1986. The Pauls were majority shareholders, collectively controlling or owning 69% of the 29 million shares of Renaissance stock. The Pauls served as directors and occasionally served as corporate officers.*

*¶84 Data Key was a minority shareholder, among approximately 269 total shareholders.*

*¶85 The Pauls decided to retire and end their involvement in Renaissance. Because their number of shares was substantial, the Pauls decided to sell the corporation rather than attempt to sell their shares on the open market.*

7

¶86 To facilitate the sale, Renaissance selected the Pauls' personal banker, Goldman Sachs, as a financial advisor for the sale, at the Pauls' request. The sale attracted two bidders: the buyer-defendant, Permira Advisers LLC, and Plato Learning, Inc.

¶87 Permira's first offer to purchase Renaissance was for $14.85 per share. Renaissance entered into an "Agreement and Plan of Merger" for this price.

¶88 Subsequently, Plato put in a higher bid of $15.50 per share. The Renaissance board of directors rejected the Plato offer, deferring to the Pauls' reasoning that the Permira offer was more likely to be consummated and that Permira would exact a $13 million penalty if Renaissance backed out of the sale agreement.

¶89 The Renaissance board of directors then amended its agreement with Permira. The new terms were that Permira would pay $15 per share to the majority shareholders (the Pauls) and $16.60 per share to the minority shareholders, totaling about $455 million.

¶90 Plato put in a new bid, offering $15.10 per share to the Pauls and $18 per share for the minority shareholders, totaling about $471 million. The Pauls informed the other directors that the Pauls would not vote in favor of the revised Plato offer. The Pauls were concerned that the Plato deal had a higher risk of non-consummation; that the Plato deal would take longer to close; that the Pauls might be held personally liable if the Permira offer were rejected; and that the Plato deal did

8

not include a licensing grant to Base Camp Learning Services, Inc., another company controlled by the Pauls.

¶91 Plato made yet another higher bid, this time of $496 million, leaving open to further negotiation the exact price per share for the Pauls and the minority shareholders.

¶92 The Renaissance board of directors rejected the latest offer from Plato and finalized the sale to Permira at $15 per share for the Pauls and $16.60 per share for the minority shareholders.

¶93 The plaintiff initiated a suit alleging four separate claims, of which only the following two are relevant here:

(1) Against the Pauls as directors and the other director-defendants, for breach of fiduciary duties of good faith, loyalty, fair dealing, and due care regarding the sale, including, <u>inter alia</u>, that the non-Paul director-defendants abdicated their responsibility by allowing the Pauls to manage the sale and that the Pauls received personal benefits including indemnification from the sale;[15]

(2) Against the Pauls as majority shareholders for breach of fiduciary duties to the minority shareholders regarding the sale, specifically that they used their

---

[15] For a general discussion of a director's fiduciary duty to the corporation and shareholders, see American Law Institute, <u>Principles of Corporate Governance: Analysis and Recommendations</u>, Part V. Duty of Fair Dealing, Introductory Note at 199-204 (1994).

influence on the board to force the sale to Permira for their own personal benefit.

¶94 The defendants filed motions, pursuant to Wis. Stat. § 802.06(2)(a)6., to dismiss the complaint for failure to state a claim upon which relief can be granted.[16]

¶95 Regarding the first claim described above for the non-Paul director-defendants' breach of fiduciary duty, the circuit court ruled that the complaint failed to allege sufficient facts to overcome the business judgment rule, "which limits judicial review of corporate decision making when corporate directors make decisions on an informed basis in good faith and in the honest belief that the action taken is in the best interests of the company."

¶96 Regarding the second claim described above for the Pauls' breach of fiduciary duty, the circuit court ruled that the Pauls had the right to sell their shares and to vote their shares in their own interests.

¶97 The court of appeals reversed the circuit court with regard to both claims. Regarding the first claim, the court of appeals reasoned that the complaint adhered to the requirements of notice pleading and that the circuit court erred in applying

---

[16] Wisconsin Stat. 802.06(2)(a)6. provides:

[T]he following defenses may at the option of the pleader be made by motion:

. . . .

6. Failure to state a claim upon which relief can be granted.

10

the business judgment rule in deciding the motion to dismiss the complaint.

¶98 Regarding the second claim, the court of appeals reasoned that the allegations in the complaint were sufficient to give rise to an inference that the Pauls' actions and undue influence over the board's actions went beyond the mere sale of their shares and violated the Pauls' duty to minority shareholders.

¶99 The court of appeals remanded the matter to the circuit court for further proceedings on these surviving claims.

II

¶100 A motion to dismiss a complaint tests the legal sufficiency of the complaint. Whether the complaint states a claim upon which relief can be granted is a question of law.[17] Accordingly, this court decides a motion to dismiss a complaint for failure to state a claim upon which relief can be granted independently of the circuit court and court of appeals, benefiting from their analysis.[18]

¶101 For purposes of deciding a motion to dismiss, a court must accept as true the facts pleaded and all reasonable inferences that may be drawn from the pleadings.[19] The pleadings

---

[17] *Johnson v. Rogers Mem'l Hosp., Inc.*, 2001 WI 68, ¶15, 244 Wis. 2d 364, 627 N.W.2d 890.

[18] *MBS-Certified Public Accountants, LLC v. Wis. Bell, Inc.*, 2012 WI 15, ¶25, 338 Wis. 2d 647, 809 N.W.2d 857.

[19] *Below v. Norton*, 2008 WI 77, ¶18, 310 Wis. 2d 713, 751 N.W.2d 351.

are to be liberally construed so as to do substantial justice.[20] The complaint is not required to state all the ultimate facts constituting each cause of action.[21] The complaint should be dismissed as legally insufficient only if it is clear that under no circumstances can the claimant recover.[22] A court should not dismiss a claim unless it appears to a certainty that no relief can be granted under any set of facts that a claimant can prove in support of the allegations in the complaint.[23]

¶102 To survive a motion to dismiss, the complaint must satisfy the notice pleading requirements of Wisconsin's Rules of Civil Procedure. Wisconsin Stat. § 802.02 requires that a pleading contain a short and plain statement identifying the transaction or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

¶103 Section 802.02 provides as follows:

---

[20] Wis. Stat. § 802.02(6) ("All pleadings shall be so construed as to do substantial justice."); _Doe v. Archdiocese of Milwaukee_, 2005 WI 123, ¶35, 284 Wis. 2d 307, 700 N.W.2d 180 ("[C]laims are to be liberally construed so as to do substantial justice.") (internal quotation marks and citations omitted); _Kaloti Enters., Inc. v. Kellogg Sales Co._, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205 ("[P]leadings are liberally construed.").

[21] _Ollerman v. O'Rourke Co., Inc._, 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980) (citations omitted); _Anderson v. Cont'l Ins. Co._, 85 Wis. 2d 675, 683, 271 N.W.2d 368, 373 (1978) (citing Charles D. Clausen & David P. Lowe, _The New Wisconsin Rules of Civil Procedure: Chapters 801-803_, 59 Marq. L. Rev. 1, 38 (1976)).

[22] _Anderson_, 85 Wis. 2d at 683 (citing Clausen & Lowe, _supra_ note 21, at 38); _Ollerman_, 94 Wis. 2d at 24 (citations omitted).

[23] _Doe_, 284 Wis. 2d 307, ¶20 (internal quotation marks and citations omitted).

*(1) Contents of pleadings. A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:*

*(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.*

*(b) A demand for judgment for the relief the pleader seeks.*

Wis. Stat. § 802.02(1).

¶104 When Wisconsin adopted Wis. Stat. § 802.02(1) in 1976 as part of a revision of the Wisconsin Rules of Civil Procedure, the state discarded the concept of "ultimate fact" pleading and instead endorsed the notion of "notice pleading."[24] Notice pleading in § 802.02(1) is based on the Federal Rules of Civil Procedure.[25]

¶105 Under notice pleading, a pleading need provide only fair notice to the defendant sufficient for the defendant to raise a defense: "[I]t is immaterial whether a pleading states 'facts' or 'conclusions' so long as fair notice is given, and

---

[24] For background on the adoption of notice pleading, see Charles D. Clausen and David P. Lowe, The New Wisconsin Rules of Civil Procedure: Chapters 801-803, 59 Marq. L. Rev. 1, 36-42 (1976). See also Alonge v. Rodriquez, 89 Wis. 2d 544, 552-53, 279 N.W.2d 207 (1979) (describing the change from "ultimate fact" pleading to "notice" pleading).

[25] "Subsection (1) [of Wis. Stat. § 802.02] is based on Federal Rule 8(a). Unlike the Federal Rule, however, this rule does not require a jurisdictional statement in the original pleading since Wisconsin state courts do not have the jurisdictional problems of minimum dollar amount or diversity of citizenship." Clausen & Lowe, supra note 21, at 37.

the statement of the claim is short and plain."[26] In other words, "[t]he purpose of pleadings is to notify the opposing party of the pleader's position in the case and to frame the issues to be resolved in the action for the benefit of the litigants and the court."[27]

¶106 This is not to say that the complaint can be completely devoid of facts. The pleading must identify the transaction, occurrence, or event out of which the claim arises. Notice pleading "forbids pleadings which are so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."[28] As the court recently stated regarding the factual requirements of notice pleading:

> A bare conclusion does not fulfill a plaintiff's duty of stating the elements of a claim in general terms. In short, we will dismiss a complaint if, under the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court. It is not enough for the plaintiff to contend that the requisite facts will be supplied by the discovery process.[29]

¶107 Specific and limited exceptions to notice pleading exist. For example, Wis. Stat. § 802.03(2) governs pleadings for fraud or mistake, requiring that "the circumstances

---

[26] _Id._ at 38.

[27] _Hansher v. Kaishian_, 79 Wis. 2d 374, 385, 255 N.W.2d 564 (1977).

[28] Clausen & Lowe, _supra_ note 21, at 39 (citing Wis. Stat. § 802.06(5)).

[29] _Doe_, 284 Wis. 2d 307, ¶36 (internal quotations marks and citations omitted).

14

constituting fraud or mistake shall be stated with particularity" but allowing that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Similarly, § 802.03(6) governs pleadings for libel and slander, requiring that "the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally." None of the provisions in § 802.03 governing exceptions to notice pleading applies to the instant case.

¶108 Thus, this court must determine whether the complaint sets forth a short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

¶109 I look to each claim in turn, first the claim against the Pauls as directors and the non-Paul director-defendants, and then the claim against the Pauls as majority shareholders.

III

¶110 I first examine the plaintiff's claim that the director-defendants (including the Pauls) breached their fiduciary duty to the shareholders. Because the plaintiff's claim focuses on the directors' abdication of their duties by entrusting the sale of the company to the Pauls, I look specifically at the claim against the non-Paul director-defendants.

¶111 The elements for a claim of breach of fiduciary duty are as follows: (1) the defendant had a fiduciary duty; (2) the

15

*defendant breached that duty; and (3) the breach of duty caused injury to the plaintiff.*[30]

¶112 On the first element, the plaintiff alleges that the defendants, as directors of a publicly held company, owe fiduciary duties to the shareholders.[31]

¶113 The plaintiff's allegation is in accord with our state's law. Wisconsin has long recognized that a trust relationship exists between the shareholders and the directors and that fiduciary duties of the directors to the shareholders arise from the relationship.[32] Directors owe fiduciary duties to individual stockholders, not merely to the corporation itself.[33] "[O]fficers and directors of a corporation occupy a position of trust and confidence, and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them."[34]

---

[30] *Reget v. Paige*, 2001 WI App 73, ¶12, 242 Wis. 2d 278, 626 N.W.2d 302.

[31] Second Amended Complaint, ¶24.

[32] *Grognet v. Fox Valley Trucking Serv.*, 45 Wis. 2d 235, 241-42, 172 N.W.2d 812 (1969).

[33] *Rose v. Schantz*, 56 Wis. 2d 222, 228, 201 N.W.2d 593 (1972).

[34] *Grognet*, 45 Wis. 2d at 242 (internal quotation marks) (citing *Timme v. Kopmeier*, 162 Wis. 571, 575, 156 N.W. 961 (1916)).

¶114 On the second element, the nature of this fiduciary duty is one of good faith, fair dealing, and loyalty.[35]

¶115 The plaintiff alleges essentially two breaches of fiduciary duty: (1) that the directors abdicated their duty of care in allowing the Pauls to run the sale of the company without oversight; and (2) that the directors received self-interested benefits that led them to vote for the Permira offer over the Plato offer.

¶116 I conclude that the plaintiff sufficiently alleges a breach of the directors' fiduciary duty.

¶117 The director-defendants assert that the complaint does not overcome the business judgment rule and consequently must be dismissed for failure to state a claim. The director-defendants point to Wis. Stat. § 180.0828 for support. They argue that because the complaint fails to state facts demonstrating specific circumstances that overcome the business judgment rule, the complaint cannot survive a motion to dismiss.

¶118 Wisconsin Stat. § 180.0828 creates a statutory version of the business judgment rule: A director is not liable for damages for liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the claimant proves that the breach or failure

---

[35] See Zastrow v. Journal Communic'ns, Inc., 2006 WI 72, ¶¶28-29, 291 Wis. 2d 426, 718 N.W.2d 51 (holding that fiduciary duty includes duty of loyalty and duty to refrain from acting in self-interest); Modern Materials, Inc. v. Advanced Tooling Specialists, Inc., 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996) ("It is well established that a corporate officer or director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business.").

17

to perform falls within one of the exceptions set forth in the statute.

¶119 Section 180.0828, the business judgment rule statute, reads in full as follows:

(1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

(a) _A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest._

(b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.

(c) _A transaction from which the director derived an improper personal profit._

(d) _Willful misconduct._

(2) A corporation may limit the immunity provided under this section by its articles of incorporation. A limitation under this subsection applies if the cause of action against a director accrues while the limitation is in effect (emphasis added).[36]

¶120 The director-defendants read this statute as providing blanket immunity for directors unless the complaint alleges that the directors' liability is based on conduct falling within Wis.

---

[36] Limitations provided by articles of incorporation are not at issue in the present case.

Stat. § 180.0828 (1)(a)-(d). Thus the director-defendants request that the court create an exception to the notice pleading requirements of Wis. Stat. § 802.02(2) and require the complaint to plead facts that, if proven, would meet the enumerated statutory circumstances necessary to overcome the business judgment rule and impose liability on directors.

¶121 The director-defendants argue that the notice pleading requirements are surpassed by the need for specific fact pleading in a suit against corporate directors for breach of fiduciary duty. Specific fact pleading in the complaint is required, according to the director-defendants, to limit court involvement in business decisions in which courts have no expertise and to encourage people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability.[37]

¶122 Like the court of appeals, I reject the director-defendants' position. I agree with the court of appeals that courts in notice pleading jurisdictions traditionally disfavor application of the business judgment rule at the motion-to-dismiss stage because the rule generally requires a fact-intensive analysis incompatible with notice pleading. I agree with the court of appeals that the complaint is not required to

---

[37] "The business judgment rule . . . contributes to judicial economy by limiting court involvement in business decisions where courts have no expertise and contributes to encouraging qualified people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability." Reget, 242 Wis. 2d 278, ¶17 (a summary judgment case).

19

include allegations with considerable specificity sufficient to defeat the defense of the business judgment rule.[38]

¶123 Regardless of whether the business judgment rule is viewed as a "mere rule of evidence,"[39] an "affirmative defense,"[40] an "evidentiary presumption,"[41] or, as the defendants aver, a "blanket rule of non-liability,"[42] application of the business judgment rule is inherently fact-based, ordinarily requiring investigation of the particular acts, interests, and decision-making processes of various actors.[43]

¶124 My holding that notice pleading requirements disfavor specific fact pleading regarding the business judgment rule at the motion-to-dismiss stage is supported by cases in other notice-pleading jurisdictions. The paradigmatic case in this regard is In re Tower Air, Inc., 416 F.3d 229, 238-39 (3d Cir. 2005).

---

[38] The court of appeals discusses its reasoning in more detail in its opinion, Data Key Partners, 350 Wis. 2d 347, ¶¶23-26.

[39] Defendants-Respondents-Petitioners' Brief at 17.

[40] Data Key Partners, 350 Wis. 2d 347, ¶24; Defendants-Respondents-Petitioners' Brief at 16.

[41] Reget, 242 Wis. 2d 278, ¶¶18-22.

[42] Defendants-Respondents-Petitioners' Brief at 16.

[43] See Yates v. Holt-Smith, 2009 WI App 79, ¶¶22-26, 319 Wis. 2d 756, 768 N.W.2d 213 (business judgment rule does not shield director who evidence shows has acted in bad faith); Reget, 242 Wis. 2d 278, ¶20 (deciding application of business judgment rule on summary judgment after review of "sufficient evidentiary facts").

¶125 In *Tower Air*, the United States Court of Appeals for the Third Circuit stated that as a general rule it would not rely on the business judgment rule to trigger dismissal under Federal Rule of Civil Procedure 12(b)(6), the analogous federal rule to Wisconsin's § 802.06(2)(a)6. The Third Circuit reasoned that the business judgment rule is an affirmative defense, which will trigger dismissal if it is raised and unanswered on the face of the complaint itself.

¶126 In *Tower Air*, the shareholder claimant alleged, inter alia, that the directors of Tower Air breached their fiduciary duty to act in good faith by ignoring various deficiencies in Tower Air's management and business deals and by failing to review and provide oversight for those deficiencies. In *Tower Air*, the trial court dismissed the complaint, requiring the claimant to allege specific facts upon which the claim is based.

¶127 The Third Circuit rejected the trial court's position, stating that the trial court "erroneously preempted discovery on certain claims by imposing a heightened pleading standard not required by [the] Federal Rule[s] of Civil Procedure" by requiring the shareholder to plead specific facts.[44] The Third Circuit distinguished between Delaware's heightened pleading requirements and the relaxed pleading standards of the federal courts that "do not require a claimant to set out in detail the facts upon which he bases his claim."[45]

---

[44] *In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005).

[45] *Id.* at 237 (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

21

¶128 In a notice pleading jurisdiction, "supporting facts should be alleged, but only those necessary to provide the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Tower Air*, 416 F.3d at 237 (internal quotation marks and citation omitted).

¶129 Based on this reasoning, the Third Circuit held that as a general rule, "we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint . . . ." *Tower Air*, 416 F.3d at 238.

¶130 The *Tower Air* court's analysis did not stop here. It further reasoned that if "an unanswered affirmative defense appears on [the] face" of the complaint, the shareholder claimant had to "plead around the business judgment rule." *Tower Air*, 416 F.3d at 238 (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).[46]

---

*Tower Air* was decided prior to *Twombly*, 550 U.S. 544, and *Iqbal*, 555 U.S. 1030, regarding the federal pleading standard necessary to survive a motion to dismiss under Rule 12(b)(6).

No Wisconsin case has adopted the *Twombly/Iqbal* standard of heightened pleading requirements.

[46] When the business judgment rule is not explicitly stated on the face of the complaint, courts applying the *Tower Air* rule have "rejected the argument that dismissal is appropriate where the business judgment rule is *implicitly* raised." *See Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 557 (D. Del. 2008) (emphasis added) (citing *Shamrock Holdings, Inc. v. Arenson*, 456 F. Supp. 2d 599 (2006)). Absent an explicit mention of the business judgment rule, "defendants are not required to plead around the business judgment rule at [the motion-to-dismiss] stage in the proceedings." *Shamrock*, 456 F. Supp. 2d at 609.

22

¶131 In *Tower Air*, the shareholder claimant specifically alleged in each of his claims that the decisions of the directors "merited no business judgment protection because they were taken in bad faith." *Tower Air*, 416 F.3d at 234. Thus, the *Tower Air* court reasoned that the shareholder claimant had "[pled] around the business judgment rule." *Id.* at 238.

¶132 In the instant case, the plaintiff refers to the business judgment rule statute, Wis. Stat. § 180.0828, on the face of the complaint and also pleads around the rule.

¶133 Specifically, the plaintiff alleges that the rule is inapplicable in the instant case because the director-defendants engaged in "willful misconduct," one of the exceptions to the applicability of Wis. Stat. § 180.0828:

> Notably, because the Director Defendants have *willfully failed* to deal fairly with the minority shareholders, and have derived or will derive an improper personal benefit and/or have engaged in willful misconduct, *they are not entitled to any protection of Sec. 180.0828, Wis. Stat.* or any protective provision in the Company's Articles of Incorporation or Bylaws.

Second Amended Complaint, ¶27.

¶134 I agree with the court of appeals that, construed liberally, the complaint sufficiently alleges facts that, if true, plead around the business judgment rule:

> Data Key alleged in its complaint, among many other substantive allegations, that the directors engaged in "willful misconduct by willfully failing to deal fairly with the Plaintiffs and the Company's other minority public shareholders in a matter in which they have a material conflict of interest." The defendants acknowledge this allegation but nonetheless argue that Data Key's complaint comes "nowhere close to satisfying" the exceptions to the business judgment

23

*rule and that "nothing resembling" willful misconduct is alleged in Data Key's complaint. The defendants thus appear to take the position that application of the rule at the motion to dismiss stage of proceedings requires that a plaintiff plead facts sufficient to defeat the defense with considerable specificity. Such specificity is generally not required for purposes of notice pleading.*

*Data Key Partners*, 350 Wis. 2d 347, ¶25 (emphasis added).

¶135 To successfully plead the "willful misconduct" of the director-defendants necessary to fall within the exception to the business judgment rule listed in Wis. Stat. § 180.0828(1)(d), the plaintiff need not state the ultimate facts.

¶136 The plaintiff's allegations sufficiently plead facts regarding the deliberate, intentional, or knowing misconduct of the director-defendants that could give rise to "willful misconduct." The plaintiff alleged that the director-defendants "abdicated their responsibilities" by allowing the Pauls to run the sale and deliberately failed to independently investigate the sale due to their self-interested dealings in receiving payments and benefits from the Permira sale.[47]

¶137 In the instant case, I would embrace the holding of *Tower Air* that, as a general rule, courts in notice pleading jurisdictions will not rely on the business judgment rule to dismiss a complaint on a motion to dismiss.

¶138 The Third Circuit's reasoning is consistent with the general trend of federal cases both before and after *Tower Air*, which note that the business judgment rule is a fact-intensive

---

[47] *See* ¶93, *infra*.

24

inquiry that is inappropriate for resolution at the motion-to-dismiss phase.[48]

¶139 The director-defendants assert that to survive a motion to dismiss, a claimant must allege facts to overcome the presumption of the business judgment rule. They claim that "a majority of jurisdictions outside of Wisconsin . . . require allegations of fact that call into question the availability of the Business Judgment Rule . . . ."[49] They cite 1 Stephen A. Radin, The Business Judgment Rule 58-61 (6th ed. 2009), as support for this proposition of law. I do not read Radin this way.

¶140 Radin contrasts Delaware law, which requires a complaint to plead facts with specificity, with federal law, which requires notice pleading.[50] Radin's overview of the federal case law supports the proposition that the Tower Air test is the norm in federal courts, in which no special fact

---

[48] The court of appeals, Data Key Partners, 350 Wis. 2d 347, ¶23, cites one commentator who summarizes the general view in federal case law that "determination and application of the business judgment rule requires a fact-intensive analysis that is inappropriate at the motion-to-dismiss stage." Zachary H. Starnes, The Business Judgment Rule After Twombly and Iqbal: Must Plaintiffs Now Plead Around the Rule to Survive a 12(b)(6) Motion To Dismiss?, 35 Am. J. Trial Advoc. 639, 655 (Spring 2012) (footnotes omitted).

[49] See Defendants-Respondents-Petitioners' Brief at 26.

[50] The court of appeals rejected an argument from the director-defendants based on Delaware law, which relied heavily on Mendel v. Carroll, 651 A.2d 297 (Del. Ch. 1994). The court of appeals determined that the case was inapplicable, because of the differences between Wisconsin and Delaware pleading requirements. Data Key Partners, 350 Wis. 2d 347, ¶¶30-33.

25

*pleading requirements exist. These cases under federal notice pleading do not rely on the business judgment rule at the motion to dismiss phase.[51] These federal decisions construing the federal counterpart to Wis. Stat. § 802.02(1) of the Wisconsin Rules of Civil Procedure are persuasive in interpreting § 802.02(1), but are not controlling.[52]*

¶141 *Perhaps the paradigmatic post-*Tower Air *case is* Shamrock Holdings, Inc. v. Arenson*, 456 F. Supp. 2d 599 (D. Del. 2006). In* Shamrock*, plaintiff corporate directors and shareholders sought a judgment declaring that they did not breach their fiduciary duty during the sale of the corporation. The defendant minority shareholders filed a counterclaim alleging that the directors and shareholders breached their fiduciary duty by acting in bad faith, by being grossly negligent, and by self-dealing. The plaintiff corporate directors and shareholders filed a motion to dismiss the counterclaim, alleging that the minority shareholders implicitly raised the business judgment rule by the nature of their allegations and were required to plead around the business judgment rule.*

---

[51] *1 Stephen A. Radin,* The Business Judgment Rule *60-61 & n.247 (6th ed. 2009).* See also *FDIC v. Baldini, 983 F. Supp. 2d 772, 783, (S.D. W. Va. 2013), listing "overwhelming [federal] authority to support . . . [the position] that the business judgment rule is highly fact dependent and, therefore, inappropriate for consideration on a motion to dismiss."*

[52] Wilson v. Cont'l Ins. Cos.*, 87 Wis. 2d 310, 316, 274 N.W.2d 679 (1979).*

¶142 The *Shamrock* court denied the motion to dismiss. Citing *Tower Air*, the court declared that as a general rule the court will not rely on the business judgment rule to trigger dismissal of a complaint at the motion-to-dismiss stage. *Shamrock*, 456 F. Supp. 2d at 609.[53]

¶143 The director-defendants, by urging that the plaintiff be required to plead particular facts to overcome the business judgment rule at the motion-to-dismiss phase, are essentially asking that this court adopt specific fact pleading rules in Wisconsin. I would adhere to the Third Circuit's decision in *Tower Air* and subsequent decisions of other courts that have refused to change notice pleading rules for a cause of action against corporate directors for breach of fiduciary duty.

¶144 The defendants attempt to find support in older Wisconsin cases, which required specific fact pleading regarding a director's breach of fiduciary duty. They cite, for example, *Polacheck v. Michiwaukee Golf Club Land Co.*, 198 Wis. 78, 82, 223 N.W. 233 (1929), which sustained a demurrer based on the complaint's failure to allege specific abuse of power by corporate officers, and *Thauer v. Gaebler*, 202 Wis. 296, 232 N.W. 561 (1930), which held that a complaint against directors was insufficient without allegations of abuse of power, bad faith, willful abuse of discretion, or positive fraud.

¶145 These cases predate Wisconsin's notice pleading rules adopted in 1976 and have limited applicability in current notice

---

[53] *See also Wolford*, 554 F. Supp. 2d at 556-59 (a complaint must meet the notice pleading requirements of the federal rules and does not have to plead around the business judgment rule).

27

pleading. The court explained the change in pleading requirements as follows:

> [T]he new rules of civil procedure provide for notice pleading, and the resolution of the precise facts which sustain the claim is left to discovery.
>
> . . . .
>
> Although under the prior demurrer provision, complaints were to be construed liberally in favor of stating a cause of action, under the new rules complaints are to be construed even more liberally. A complaint which might well have failed under the old procedure for failure to state sufficient facts now will be sustained if reasonable notice is given to the defendant in respect to the nature of the claim.[54]

¶146 Like the court of appeals,[55] I cannot locate any Wisconsin case in which the business judgment rule was applied at the motion-to-dismiss phase after our state's shift to notice pleading.

¶147 After analyzing Wis. Stat. § 802.02(1) and the federal decisions interpreting the Wisconsin counterpart to the federal rules, I conclude that the complaint is sufficient to state a claim for breach of fiduciary duty against the director-defendants in alleging the following:

- The directors allowed the Pauls to run the sale process exclusively;[56]

---

[54] *Anderson*, 85 Wis. 2d at 683-84 (citing Clausen & Lowe, *supra* note 21, at 38).

[55] *Data Key Partners*, 350 Wis. 2d 347, ¶21.

[56] Second Amended Complaint, ¶47.

- *The directors failed to independently investigate the deadlines given by the Pauls for the end of the bidding process;*[57]

- *The directors refused to investigate the higher bid fairly, and accepted the lower bid;*[58]

- *The directors received particular payments and benefits from their vesting stock options and would not have received them absent the sales agreement with Permira;*[59]

- *The directors received indemnification for breaches of their fiduciary duties and would not have received them absent the sales agreement with Permira;*[60]

- *The directors "engaged in willful misconduct by willfully failing to deal fairly with the [plaintiffs and other shareholders]."*[61]

¶148 The allegations in the complaint, which this court must accept as true, constitute a breach of loyalty upon which relief can be granted.  The complaint thus survives a motion to dismiss.

¶149 On the third element, requiring an allegation that the breach of duty caused injury to the plaintiff, the complaint

---

[57] *Id.*, ¶49.

[58] *Id.*, ¶57.

[59] *Id.*, ¶¶62-63.

[60] *Id.*

[61] *Id.*, ¶27.

*alleges that the sale of the corporation to Permira resulted in the minority shareholders' receiving less than the full value of their shares and that the sale of the corporation led to a loss of control of its shares.*

*¶150 The director-defendants argue that this is not a harm, because the complaint does not allege that if the corporation had not been sold, the stock would have been worth more than the $16.60 per share it actually received.*

*¶151 Like the court of appeals, I am not persuaded by the director-defendants' argument. As the court of appeals notes, the plaintiff relies on the difference in the value of the two offers: "[T]he Plato offers illustrate that the price that [the plaintiff] actually received from [the buyer-defendant] was less than the shares' value."[62] The complaint details that the Plato offer would have paid $18 per share; the buyer-defendant's offer ended up paying $16.60 per share. This difference in price is, for purposes of notice pleading and a motion to dismiss, sufficient to allege an injury caused by an alleged breach of fiduciary duty. The exact form of injury suffered need not be spelled out in a complaint under the rules of notice pleading.[63]*

*¶152 I agree with the court of appeals that the complaint in the present case alleges a sufficient harm and that the*

---

[62] *Data Key Partners*, 350 Wis. 2d 347, ¶45.

[63] *Liebovich v. Minn. Ins. Co.*, 2008 WI 75, ¶40 310 Wis. 2d 751, 751 N.W.2d 764 (holding that claimants' allegation that the defendants "interfered with [their] interests" and that they were "aggrieved by" the conduct is sufficient to allege injury for purpose of triggering a duty to defend).

motion to dismiss is not the appropriate procedure in which to argue the proper method for assessing the value of the corporation.[64]

¶153 Accordingly, I would hold that, under our notice pleading requirements, the complaint sufficiently alleges a claim for a breach of fiduciary duty by the director-defendants.

IV

¶154 I turn to the claims of the plaintiff minority shareholder against the Pauls for breach of their fiduciary duty as majority shareholders. The business judgment rule has no application to this claim.[65]

¶155 Again, the elements for a claim of breach of fiduciary duty are: (1) the defendant had a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused injury to the plaintiff.[66]

¶156 On the first element, the plaintiff alleges that the Pauls, as majority shareholders, have a fiduciary duty to minority shareholders.[67]

---

[64] *Data Key Partners*, 350 Wis. 2d 347, ¶46 ("To the extent that there are legal standards that would limit the methods by which [the plaintiff] may prove the value of its shares, the defendants will be free to argue those standards as applied to the evidence as the factual record develops.").

[65] The statutory version of the business judgment rule, Wis. Stat. § 180.0828, applies to directors, not controlling or majority shareholders. An analysis of the business judgment rule's application to the pleading stage is not relevant to the issue of a majority shareholder's breach of fiduciary duty.

[66] *Reget*, 242 Wis. 2d 278, ¶12.

[67] Second Amended Complaint, ¶24.

31

¶157 The plaintiff's allegation of such a fiduciary duty is in accord with our state's law. In Wisconsin it is a "well-settled and often applied rule of corporation law and equity that a majority stockholder occupies a fiduciary relationship toward minority shareholders."[68]

¶158 Generally, when majority shareholders take control of the corporation's actions, they stand in the same fiduciary relation to other shareholders as does a director or officer:

> A majority shareholder who actually dominates the company, although not an officer, stands in the same fiduciary relation to the other shareholders as does a director or other officer. If a shareholder exercises absolute de facto control over a corporation, such actual dominion carries with it fiduciary responsibility regardless of the presence or absence of de jure titles. If a majority shareholder is also a director and the president or other chief officer of the corporation, that shareholder is generally considered a fiduciary.

---

[68] *Prod. Credit Ass'n of Lancaster v. Croft*, 143 Wis. 2d 746, 754, 423 N.W.2d 544 (Ct. App. 1988) (citing *S. Pac. Co. v. Bogert*, 250 U.S. 483, 487-88 (1919)).

32

12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5811 (West 2009).[69]

¶159 The complaint alleged the following relating to the Pauls' control of the sale of the corporation:

- The director-defendants "essentially abdicated their responsibilities as directors in conjunction with the sale process——leaving it to be run almost exclusively by the Pauls";[70]

- The Pauls used their own personal bank, Goldman Sachs, to serve as financial advisor for the corporation's sale, thus creating a conflict of interest;[71]

---

[69] *See* 2 James Cox & Thomas Hazen, *Treatise on the Law of Corporations* § 11:11 (3d ed. 2013) ("The basis for the controlling stockholder's fiduciary obligation is the sound policy that, just as directors are bound by certain fiduciary obligations, one who has the potential to control the board's actions should be subject to an obligation as rigorous as those applied to the directors."); *Yanow v. Teal Indus., Inc.*, 422 A.2d 311, 322, 178 Conn. 262, (1979) ("[T]he majority has the right to control, but when it does so, it occupies a fiduciary relationship toward the minority, as much as the corporation itself or its officers and directors."); *Knaebel v. Heiner*, 663 P.2d 551, 552-53 (Alaska 1983) ("It is well established that majority stockholders are considered fiduciaries with respect to minority stockholders within the same corporation. This fiduciary duty encompasses the obligation to act in good faith, to enter into transactions that are fair, and to fully disclose material facts."); *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 193-94 (Iowa 1980) ("[M]ajority shareholders do owe a fiduciary duty to minority shareholders.").

[70] Second Amended Complaint, ¶47.

[71] Second Amended Complaint, ¶¶47, 67.

33

- *Mr. Paul was the primary contact for Goldman Sachs at the corporation and served as the liaison between Goldman Sachs and the corporation;[72]*

- *The Pauls "completely dictate[d] the timing of the sale process from beginning to end."[73]*

¶160 Viewing these allegations as admitted by the defendants under our standard of review for a motion to dismiss, I would hold that they sufficiently allege the first element, namely that the Pauls as majority shareholders directly controlled the behavior of the company, triggering their fiduciary duty to the minority shareholders.

¶161 On the second element, the nature of this fiduciary duty, the duty is one of good faith, fair dealing, and loyalty.[74] The majority shareholders "may not use their position of trust to further their private interests."[75]

---

[72] Second Amended Complaint, ¶48.

[73] Second Amended Complaint, ¶49.

[74] See Zastrow, 291 Wis. 2d 426, ¶¶28-29 (holding that fiduciary duty includes duty of loyalty and duty to refrain from acting in self-interest); Modern Materials, 206 Wis. 2d at 442 ("It is well established that a corporate officer or director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business.").

[75] Notz v. Everett Smith Group, Ltd., 2009 WI 30, ¶20, 316 Wis. 2d 640, 764 N.W.2d 904 (quoting Rose, 56 Wis. 2d at 228-29).

"A consistent facet of a fiduciary duty is the constraint on the fiduciary's discretion to act in his own self-interest because by accepting the obligation of a fiduciary he consciously sets another's interests before his own." Zastrow, 291 Wis. 2d 426, ¶28.

¶162 The complaint alleges that the Pauls breached their majority shareholders' fiduciary duty of fair dealing and loyalty through self-dealing and by exerting undue influence over the board to cause a sale of the entire company in a manner that benefited the Pauls at the expense of minority shareholders.

¶163 The allegations of self-dealing in the complaint, which this court must accept as true, can constitute a claim for breach of fiduciary duty upon which relief can be granted.

¶164 The complaint alleges that the Pauls would have received a tangible personal benefit from one offer and not the other. The plaintiff alleges that the Pauls rejected the higher Plato bid and accepted the Permira bid for several reasons, but alleges that at least one reason was that the higher Plato bid did not include a favorable licensing agreement for the Pauls:

> [U]nlike the Sale Agreement with Permira, the Plato Proposal apparently did not include the grant to Base Camp Learning Services, Inc. . . . , a company controlled by the Pauls, of a non-exclusive, non-transferable license to use certain of Renaissance's software products and services for the internal educational use of the family and descendants of the Pauls . . . .[76]

¶165 The courts do not use the motion to dismiss as an opportunity to weigh the facts.[77] Rather, a court gauges the motion to dismiss by viewing the facts alleged as true. The

---

[76] Second Amended Complaint, ¶54.

[77] Cf. In re A.S., 2001 WI 48, ¶35, 243 Wis. 2d 173, 626 N.W.2d 712 (noting, in another civil context, that "in reviewing a motion to dismiss, we do not weigh the facts . . . .").

*allegations of the complaint, taken as true, claim that the Pauls got a personal benefit in the Permira deal but not in the Plato deal. This assertion is sufficient to support a reasonable inference that the Pauls engaged in self-dealing and violated their fiduciary duty of loyalty.[78]*

*¶166 Given the notice pleading standards of our state, I would hold that the complaint in the instant case sufficiently alleges that the Pauls in their capacity as majority shareholders breached their fiduciary duty of loyalty to the minority shareholders. This allegation states a claim upon which relief can be granted.*

*¶167 On the third element, requiring an allegation that the breach of fiduciary duty caused injury to the plaintiff, the complaint alleges that the sale of the corporation to Permira resulted in the minority shareholders' receiving less than the full value of their shares.[79]*

*¶168 As I have explained previously,[80] the difference in prices between the two offers sufficiently alleges an injury*

---

[78] *When a controlling shareholder sits on both sides of a transaction, the burden is on that controlling shareholder to demonstrate that the transaction was fair. 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations, § 5811.10 (West 2009) ("When a majority, dominant or controlling shareholder deemed to be a fiduciary is challenged for having engaged in self-dealing in property or services of the corporation, that shareholder has the burden of coming forward with evidence and the burden of persuasion to show that the transaction was scrupulously fair.").*

[79] *Second Amended Complaint, ¶4.*

[80] *See ¶¶83-85, supra.*

*caused by the Pauls' alleged breach of fiduciary duty for purposes of notice pleading and a motion to dismiss.*

*¶169 For the reasons set forth, I would agree with the court of appeals that the complaint satisfies the requirements of notice pleading. Our pleading rules require only that a complaint plead a "short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Wis. Stat. § 802.02(1).*

*¶170 The complaint in the instant case gives fair notice to the defendants of the claims upon which relief can be granted. I am not presented with sufficient reason to create an exception to our notice pleading requirements in the present case.*

*¶171 Accordingly, I would affirm the decision of the court of appeals that the circuit court erred in granting the motions to dismiss the two claims discussed above, and I would remand the matter to the circuit court for further proceedings consistent with this opinion.*

* * * *

¶172 For the reasons set forth, I dissent.

¶173 I am authorized to state that Justices ANN WALSH BRADLEY and N. PATRICK CROOKS join this dissent.

37